

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KEVIN SANTIAGO #294597** | **CIVIL ACTION** |
| versus | **NO. 04-1127** |
| **BURL CAIN, WARDEN** | **SECTION: "S" (3)** |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE.**

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

```
___ Fee_____
___ Process_____
 X  Dktd_____
___ CtRmDep_____
___ Doc. No._____
```

Petitioner, Kevin Santiago, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On March 2, 1999, petitioner was convicted of possession of cocaine in violation of La.Rev.Stat.Ann. § 40:967.[2] On May 7, 1999, the trial court found petitioner to be a third offender and sentenced him as such to a term of life imprisonment without benefit of probation, parole, or suspension of sentence, with credit for time served.[3] His conviction and enhanced sentence were affirmed by the Louisiana Fourth Circuit Court of Appeal on February 21, 2001.[4] He then filed with the Louisiana Supreme Court an application for a supervisory writ of review[5] which was denied on February 8, 2002.[6]

On or about September 6, 2002, petitioner filed with the state district court an application for post-conviction relief.[7] That application was denied on October 8, 2002.[8] He sought review of that denial by filing an application for a supervisory writ with the Louisiana Fourth Circuit Court of Appeal. That application was denied on December 12, 2002.[9] He then filed with the Louisiana

---

[2] State Rec., Vol. I of VII, minute entry dated March 2, 1999; State Rec., Vol. I of VII, jury verdict form.

[3] State Rec., Vol. III of VII, transcript of May 7, 1999, pp. 11-12; State Rec., Vol. I of VII, minute entry dated May 7, 1999.

[4] State v. Santiago, No. 2000-KA-0960 (La. App. 4th Cir. Feb. 21, 2001) (unpublished); State Rec., Vol. I of VII.

[5] State Rec., Vol. V of VII.

[6] State v. Santiago, 807 So.2d 860 (La. 2002) (No. 2001-KO-0952); State Rec., Vol. V of VII.

[7] State Rec., Vol. VI of VII.

[8] State Rec., Vol. VI of VII.

[9] State v. Santiago, No. 2002-K-2237 (La. App. 4th Cir. Dec. 12, 2002) (unpublished); Sate Rec., Vol. V of VII.

Supreme Court an application for supervisory review[10] which was denied on February 13, 2004.[11]

On or about March 11, 2003, while that application was still pending before the Louisiana Supreme Court, petitioner filed with the state district court a motion to correct illegal sentence.[12] That motion was denied on March 13, 2003.[13] Petitioner sought review of that denial by filing with the Louisiana Fourth Circuit Court of Appeal an application for a supervisory writ of review.[14] That application was denied on May 16, 2003.[15] He then filed with the Louisiana Supreme Court an application for a writ of certiorari[16] which was denied on June 18, 2004.[17]

While that application was still pending before the Louisiana Supreme Court, petitioner returned to the state district court to file yet another post-conviction application. That application was denied on November 17, 2003.[18] He then filed with the Louisiana Fourth Circuit Court of Appeal an application for a supervisory writ of review. On January 22, 2004, the intermediate

---

[10] State Rec., Vol. V of VII.

[11] State *ex rel.* Santiago v. State, 867 So.2d 675 (La. 2004) (No. 2003-KH-0050); State Rec., Vol. V of VII.

[12] State Rec., Vol. VI of VII.

[13] State Rec., Vol. VI of VII.

[14] State Rec., Vol. IV of VII.

[15] State v. Santiago, No. 2003-K-0719 (La. App. 4th Cir. May 16, 2003) (unpublished); State Rec., Vol. IV of VII.

[16] State Rec., Vol. V of VII.

[17] State *ex rel.* Santiago v. State, 876 So.2d 796 (La. 2004) (No. 2003-KH-1777); State Rec., Vol. V of VII.

[18] See State Rec., Vol. VI of VII, minute entry dated December 4, 2003.

appellate court granted the writ application but denied petitioner relief.[19] He then filed a motion for rehearing[20] which was denied on March 24, 2004.[21]

On April 1, 2004, petitioner filed the instant application for federal *habeas corpus* relief.[22] In support of this application, he asserts the following claims:

1. Petitioner's sentence is excessive;

2. There was insufficient evidence to support petitioner's conviction;

3. Petitioner's sentence was wrongly enhanced based on an unconstitutional prior conviction; and

4. Evidence was wrongly admitted at trial.

The state concedes that petitioner's federal application is timely and that he has exhausted available state court remedies.[23]

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and

---

[19] State v. Santiago, No. 2003-K-2221 (La. App. 4th Cir. Jan. 22, 2004) (unpublished); State Rec., Vol. IV of VII.

[20] State Rec., Vol. IV of VII.

[21] State v. Santiago, No. 2004-K-0264 (La. App. 4th Cir. Mar. 24, 2004) (unpublished); State Rec., Vol. IV of VII.

[22] Rec. Doc. 3.

[23] Rec. Doc. 11, p. 2.

mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## Facts

In its decision on the direct appeal filed by petitioner and Darryl Sumler, a co-defendant, the

Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> Teresia Lamb, a NOPD criminalist, testified that her job entails testing and identifying evidence collected at a crime scene, including controlled dangerous substances. Ms. Lamb tested and weighed the white powder and rock-like substances seized by the police at the time of the defendants' arrests. The substances tested positive for cocaine and weighed 411 grams.
>
> Detective Michael Harrison testified that he was assigned to the narcotics section of the NOPD. On May 15, 1997, Harrison executed a search warrant on 6738 Tara Lane. Earlier that day, Harrison had conducted surveillance of the residence and had witnessed, on three occasions, what he believed to be drug transactions. According to Detective Harrison, he saw various individuals knock on the front door, engage either Kevin Santiago or Darryl Sumler in brief conversations, and then give either Santiago or Sumler currency in exchange for an object. Harrison radioed these events to his backup team, and, armed with the warrant he had apparently obtained before that day's surveillance, staged his team's execution of it. He stationed two officers at the rear of the residence to thwart escape, while he and two other officers covered the front door. The burglar bars on the front of the residence were locked, so the officers ripped the bars from the hinges to gain entry. As they forced the burglar bars open, Harrison could see into the residence because the front door was open. He heard commotion in the residence, and saw Sumler run into the bathroom and then out the back door, followed by Santiago. When the officers entered the residence, they saw numerous packets of crack cocaine in the living room, kitchen and bathroom, as well as cocaine residue on a coffee table along with a razor, plastic bags and a digital scale. The officers confiscated $160.00 from the coffee table, $2,000.00 from a china cabinet in the living room, $1,433.00 from defendant Sumler, and several bags of cocaine from defendant Santiago. The officers retrieved documentation at the dwelling indicating that Ms. Ula Jimerson was the resident; however, Sumler told Harrison that he lived in the residence and that Ms. Jimerson had nothing to do with the narcotics.
>
> Sgt. Jeffrey Robertson testified that he assisted in the execution of the search warrant on 6738 Tara Lane. When he and other officers gained entry into the residence, he pursued several suspects fleeing through the back door. As he ran through the dwelling, he noticed the bathroom to his left and several packets of cocaine on the bathroom floor. Robertson chased defendant Santiago into the backyard and ordered him to stop. As Santiago complied with Robertson's order, he discarded a plastic bag. After securing Santiago, Robertson retrieved the discarded bag and saw that within the bag were several smaller bags containing a white powder. He also confiscated currency and a pager from Santiago. When Robertson returned to the house to assist in the search, he noticed powder residue on a coffee table along with a razor blade, baggies and currency. Behind an adjacent china cabinet, Robertson found numerous plastic bags containing a white powder substance. There

were three pieces of rock cocaine strewn across the living room floor, and $2,000.00 in the china cabinet drawer.

Detective Joseph Williams corroborated the testimony of the previous State's witnesses concerning execution of the search warrant and entry into the residence. Williams observed a cocaine trail into the bathroom and scooped a large quantity of unbagged cocaine from the toilet bowl. He then went into the backyard to assist in the apprehension of the fleeing suspects. Williams chased defendant Sumler through two or three neighboring backyards until Sumler surrendered. Williams stated that Sumler was Ms. Jimerson's cousin, and that Sumler frequently stayed at her residence.

Detective Paul Toye testified that he too was part of the entry team that executed the search warrant on 6732 Tara Lane. When he entered the residence, he saw defendant Sumler run into the bathroom and then exit the residence through the back door. Toye chased the fleeing suspects and apprehended Byron Glover.

The defense called Byron Glover, who testified that he had nothing to do with the narcotics recovered at 6732 Tara Lane. Glover said he went to Ms. Jimerson's residence to give her an estimate to cut the grass. He also said he walked through the residence, but saw neither cocaine nor anyone in the residence with Ms. Jimerson. He had just exited the residence and was standing in the backyard when he heard a lot of commotion and Ms. Jimerson screamed. Glover denied fleeing from the police.

Harry D. Glover, Sr., Byron Glover's father, testified that he runs a lawn and garden service and that his son, Byron, was working for him in May 1997.

In rebuttal, Officer Roy Phillips testified that he and Officer Felix covered the rear door of 6732 Tara Lane when the police executed the search warrant. When he and Officer Felix stationed themselves in the backyard, there was no one else there. Less than a minute after taking up his position, Phillips saw four men exit the rear door. Two of the four men ran from the rear yard, but were apprehended. The other two, Byron Glover and Kevin Santiago, were detained as soon as the exited the residence.[24]

### Excessive Sentence

Petitioner claims that his sentence is excessive. On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> By this assignment, the defendant Santiago argues that his sentence is unconstitutionally excessive. He contends that because his prior convictions did not

---

[24] State v. Santiago, No. 2000-KA-0960, at pp. 2-4 (La. App. 4th Cir. Feb. 21, 2001) (unpublished); State Rec., Vol. I of VII.

involve crimes of violence, he is entitled to a downward departure from the mandatory minimum sentence of life imprisonment as a third felony offender.

Recently, in State v. Lindsey, 99-3256, pp. 2-4 (La. 10/17/00), ___ So.2d ___, 2000 WL 1545310, the Louisiana Supreme Court reaffirmed the guidelines it had set forth in State v. Johnson, 97-1906 (La. 3/4/98), 709 So.2d 672, as to what circumstances must be present for a court to exercise its discretion to declare excessive a minimum sentence mandated by the Habitual Offender Law. The Court reemphasized that such a declaration is appropriate only where there is clear and convincing evidence that because of unusual circumstances, the defendant is *exceptional*, which determination may not be based solely upon the defendant's record of non-violent offenses. Lindsey, *supra*, at pp. 2-4, citing Johnson, *supra*, at pp. 6-9, 709 So.2d at 676-677.

In the instant case, the State charged Santiago with possession of more than four hundred grams of cocaine; however, the jury convicted him of simple possession. The court sentenced him pursuant to La. R.S. 15:529.1A(1)(b)(ii), which provides that a third-felony offender shall be sentenced to life imprisonment if any one of the three felonies is a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years.

In 1991 and 1997 Santiago pled guilty to possession of stolen property and possession of heroin, respectively. Possession of heroin carries a term of imprisonment of four to ten years at hard labor and a fine of not more than five thousand dollars. La. R.S. 40:966C(1).

Santiago supports his argument of excessive sentence by citing State v. Burns, 97-1553 (La. App. 4 Cir. 11/10/98), 723 So.2d 1013, writ denied, 98-3054 (La. 4/1/99), 741 So.2d 1282, in which this court vacated the life sentence of a quadruple offender after his conviction for distribution of one rock of crack cocaine. We find no relevant similarities between the instant case and Burns, however. In Burns, our decision was based upon evidence that the twenty-five year old defendant was addicted to drugs, was well-liked in the community, and had a mental deficiency relating to his having suffered a gunshot wound to the head, as well as upon the non-violent nature of his offenses and the small quantity of drugs seized. We therefore decline to extend the rationale of Burns to the instant case, which not only involves a large amount of cocaine from multiple transactions, but in which there is no evidence as to the defendant's addiction, his character, or any redeeming social virtues he might possess. See, e.g., State v. Finch, 97-2060 (La. App. 4 Cir. 2/24/99), 730 So.2d 1020, writs denied, 99-1240, 99-1300 (La. 10/8/99), 750 So.2d 179, 963; State v. Long, 97-2434 (La. App. 4 Cir. 8/26/99), 744 So.2d 143, writ denied, 99-2780 (La. 3/17/00), 756 So.2d 1140.

Unlike the defendant in Burns, Santiago's record indicates he is a recidivist whose criminal conduct continues to escalate. Therefore, we do not find that the sentence mandated by the Habitual Offender Law is unconstitutionally excessive in

this case.[25]

As the state notes in its response, petitioner cites only state law in connection with his claim. However, federal *habeas corpus* relief is available only for violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law. Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998). Accordingly, this Court will not review the state court's findings regarding the constitutionality of petitioner's sentence under state law.

However, out of an abundance of caution, the Court also notes that petitioner's sentence is not so excessive as to violate the Eighth Amendment of the United States Constitution. In Solem v. Helm, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts." United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (citing Rummel v. Estelle, 445 U.S. 263, 274-76 (1980)). "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." Gonzales, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." Id. (quotation marks omitted).

Interpreting Solem in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

---

[25] State v. Santiago, No. 2000-KA-0960, at pp. 5-6; State Rec., Vol. I of VII.

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).

Accordingly, petitioner is not entitled to relief unless he can demonstrate that his sentence is grossly disproportionate to the underlying offense by comparing the gravity of that offense against the severity of the sentence. When evaluating the excessiveness of a sentence imposed under a habitual offender statute, a court must be mindful that the "sentence is imposed to reflect the seriousness of [petitioner's] most recent offense, not as it stands alone, but in the light of his prior offenses." McGruder, 954 F.2d at 316.

In determining the proportionality of a sentence, this Court must look to Rummel v. Estelle, 445 U.S. 263 (1980), which "establishes a benchmark for disproportionate punishment under the Eighth Amendment." Gonzales, 121 F.3d at 943. In Rummel, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses. The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check. The United States Fifth Circuit Court of Appeals has held:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in Rummel falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

Gonzales, 121 F.3d at 943 (footnote omitted).

Applying this "litmus test" and considering the <u>Rummel</u> finding that a life sentence was not excessive when imposed for a nonviolent property offense where the habitual offender had two prior nonviolent property offenses, this Court must conclude that petitioner's sentence as a third offender to a term of life imprisonment, which was the mandatory sentence under Louisiana law, was not grossly disproportionate in light of petitioner's criminal history.[26] In that the sentence is not grossly disproportionate, this Court's "inquiry is finished." <u>Gonzales</u>, 121 F.3d at 942. Because petitioner's sentence is not so excessive as to violate the United States Constitution, this claim must fail.

<u>Sufficiency of the Evidence</u>

Petitioner claims that there was insufficient evidence to support his conviction. The United States Fifth Circuit Court of Appeals has noted that claims of insufficient evidence are to be analyzed pursuant to the standard set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979):

> In considering challenges to the sufficiency of evidence in habeas proceedings, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

<u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001) (quoting <u>Jackson</u>, 443 U.S. at 319). This Court may find the evidence sufficient even though the facts additionally support one or more reasonable hypotheses which are consistent with petitioner's claim of innocence. <u>Foy v. Donnelly</u>, 959 F.2d 1307, 1316 (5th Cir. 1992); <u>see also</u> <u>Gibson v. Collins</u>, 947 F.2d 780, 783 (5th Cir. 1991). "The <u>Jackson</u> inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" <u>Santellan</u>, 271

---

[26] Petitioner was previously convicted of possession of stolen property in 1991 and possession of heroin in 1997. State Rec., Vol. I of VII.

F.3d at 193 (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993)).

A sufficiency of the evidence argument presents a mixed question of law and fact. <u>Taylor v. Day</u>, Civil Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), <u>aff'd</u>, 213 F.3d 639 (5th Cir. 2000). Therefore, this Court must defer to the state court unless its decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

On direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected petitioner's challenge to the sufficiency of the evidence, holding:

> When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); <u>State v. Jacobs</u>, 504 So.2d 817 (La. 1987). The reviewing court is to consider the record as a whole, and if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. <u>State v. Mussall</u>, 523 So.2d 1305, 1309-10 (La. 1988). In applying this standard, the reviewing court must defer to the credibility choices and justifiable inferences of fact made by the jury. <u>State v. Rosiere</u>, 488 So.2d 965, 968 (La. 1986). The determination of credibility is a question of fact within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. <u>State v. Vessell</u>, 450 So.2d 938, 943 (La. 1984).
> 
> In Santiago's case, to support a conviction for possession of cocaine, the State must establish that the defendant was in possession of the drug and that he knowingly or intentionally possessed it. <u>State v. Shields</u>, 98-2283 p. 3 (La. App. 4 Cir. 9/15/99), 743 So.2d 282, 283. Guilty knowledge is an essential element of the crime of possession of cocaine. <u>State v. Williams</u>, 98-0806, p. 6 (La. App. 4 Cir. 3/24/99), 732 So.2d 105, 109, <u>writ denied</u>, 99-1184 (La. 10/1/99), 748 So.2d 433.
> 
> Sgt. Jeffery Robertson testified that he chased Santiago through the residence, into the yard, and ordered him to stop. As Santiago complied, Robertson witnessed Santiago discard a plastic bag, which contained several smaller bags of cocaine. Robertson also seized currency from Santiago.
> 
> Viewing this evidence and the evidence as a whole, in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Santiago

knowingly and intentionally possessed cocaine.[27]

In the instant case, the state court identified the proper standard, i.e. the <u>Jackson</u> standard, and applied it in a reasonable manner. Therefore, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court rejects petitioner's claim challenging the sufficiency of the evidence.

Sentence Enhancement

Petitioner claims that his sentence was wrongly enhanced in the multiple offender proceedings because the enhancement was based on a prior conviction that was unconstitutionally obtained in violation of <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969). The state argues that the state courts rejected petitioner's claim on procedural grounds[28] and, therefore, the claim is procedurally

---

[27] <u>State v. Santiago</u>, No. 2000-KA-0960, at pp. 7-8; State Rec., Vol. I of VII.

[28] On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> In this assignment of error, Santiago argues the trial court erred in adjudging him a third felony offender on the basis of a constitutionally deficient plea of guilty to possession of heroin.
> The first issue we must address is whether the defendant has preserved this issue for appellate review. In <u>State v. Cossee</u>, 95-2218 (La. App. 4 Cir. 7/24/96), 678 So.2d 72, this court held that the failure to file a written response to the multiple bill as required by La. R.S. 15:529.1(D)(1)(b) precluded appellate review of the defendant's claim that the documentary evidence was not sufficient to support the prior convictions set forth in the multiple bill.
> We have held that when, as here, the record does not contain the defendant's written response to the multiple bill, the issue will not be preserved for appellate review unless the objection was made orally. <u>State v. Anderson</u>, 97-2587 (La. App. 4 Cir. 11/18/98), 728 So.2d 14.
> At the multiple bill hearing, defense counsel questioned Santiago's identity as

barred in this federal proceeding. However, this Court need not reach the issue of whether the claim would be procedurally barred because the claim is clearly otherwise barred pursuant to Lackawanna County District Attorney v. Cross, 532 U.S. 394 (2001).

In Lackawanna, the United States Supreme Court stated:

> [W]e hold that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

Id. at 403-04 (citation omitted).[29] Therefore, petitioner is not entitled to federal *habeas corpus* relief based on his claim that he was wrongly adjudicated and sentenced as a third offender because a predicate conviction used against him was unconstitutional.

### "Other Crimes" Evidence

Petitioner claims that the trial court erred in allowing testimony regarding the drug

---

the person convicted of possession of heroin by focusing on the lack of fingerprints on the guilty plea form. Therefore, he preserved the issue of identity for appellate review; however, for the first time on appeal, counsel attacks the guilty plea as deficient in that it was not knowingly and voluntarily made. Because this issue has not been preserved for appellate review, we decline to consider it.

State v. Santiago, No. 2000-KA-0960, at p. 10; State Rec., Vol. I of VII.

[29] The Supreme Court noted that the Lackwanna prohibition would not apply where it is argued that the predicate conviction was unconstitutional because it was obtained where there was a failure to appoint counsel in violation of Gideon v. Wainwright, 372 U.S. 335 (1963). Lackawanna, 532 U.S. at 404. That limited exception is inapplicable in this case. The state district court found that petitioner was a third offender based on a 1991 conviction for possession of stolen property and a 1997 conviction for possession of heroin. The records of those convictions reflect that petitioner pled guilty to both charges and that he was represented by counsel on both occasions. State Rec., Vol. I of VII.

transactions which allegedly occurred immediately prior to the execution of the search warrant. Petitioner raised this claim in his first post-conviction application, which was denied without reasons assigned. Petitioner challenged that denial by filing writ applications with the Louisiana Fourth Circuit Court of Appeal and the Louisiana Supreme Court; those applications were also denied without reasons assigned. However, the Court notes that petitioner's co-defendant, Darryl Sumler, raised the same claim in their joint direct appeal. The Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> Prior to opening statements, counsel for Sumler unsuccessfully moved in limine to exclude any evidence of narcotics transactions. Specifically, Sumler objects to Detective Michael Harrison's testimony that surveillance of the Tara Lane residence prior to the execution of the warrant revealed that Sumler engaged in two drug transactions. Sumlar argues that because he was charged with possession of cocaine, not with distribution, Detective Harrison's testimony was prejudicial.
> La. C.E. art. 404(B)(1) provides:
>
>> Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it plans to use at trial for such purposes, **or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.** (Emphasis supplied.)
>
> Generally, evidence of other crimes is inadmissible at trial because of the likelihood that the trier of fact will convict the defendant of the immediate charge based on his prior criminal acts. However, pursuant to the res gestae exception, evidence of another crime is admissible "when it is related and intertwined with the charged offense to such an extent that the State could not have accurately presented its case without reference to the other crime." State v. Colomb, 98-1813[,] p. 3 (La. 10/1/99), 747 So.2d 1074, 1075; State v. Powell, 98-0278, p. 6 (La. App. 4 Cir. 11/17/99), 746 So.2d 825, 829. A close connexity in time and place is required

between the evidence of other crimes and the charged offense. Powell, 98-0278 at p. 7, 746 So.2d at 829. Evidence admissible under the res gestae exception is not subject to any notice requirements. See La. C.E. art. 404(B)(1). In State v. Colomb, *supra*, the Louisiana Supreme Court elaborated on the res gestae exception:

> The res gestae or integral act doctrine thus 'reflects the fact that making a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness.' Old Chief v. United States, 519 U.S. 172, 186, 117 S.Ct. 644, 653, 136 L.Ed.2d 574 (1997). The test of integral act evidence is therefore not simply whether the state might somehow structure its case to avoid any mention of the uncharged act or conduct but whether doing so would deprive its case of narrative momentum and cohesiveness, 'with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.' Id.

98-2813 at p. 3, 747 So.2d at 1076.

In the instant case, we conclude that the objectionable evidence was admissible pursuant to the res gestae exception. It was part of the orderly narration of fact leading up to the execution of the search warrant, and culminating in the defendants' arrests.[30]

The United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, to the extent that petitioner is arguing that the state courts merely misapplied state evidence law, his claim is not reviewable in this federal proceeding.

To the extent that petitioner is arguing that the introduction of the other crimes evidence violated his federal constitutional rights, he has failed to demonstrate that he is entitled to *habeas* relief on that basis. Even if the evidence were improperly admitted, that alone would not necessarily warrant *habeas* relief. The United States Fifth Circuit Court of Appeals has noted:

---

[30] State v. Santiago, No. 2000-KA-0960, at pp. 15-16; State Rec., Vol. I of VII.

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted."). In the instant case, even if the other crimes evidence was wrongly admitted into evidence, it cannot be said to have played a crucial, critical, and highly significant role in petitioner's conviction in light of the overwhelming evidence against him, including the eyewitness testimony of Sgt. Jeffery Robertson. Petitioner has failed to meet his burden to demonstrate that the admission of the other crimes evidence resulted in a denial of fundamental fairness.

Accordingly, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court rejects petitioner's claim.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that petitioner's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___6___ day of ___April___, 2005.

_____
DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE